BENNER A. ROOT *et al.*, Plaintiffs-Appellants, v. JH INDUSTRIES, INC., Defendant-Appellee.

First District (5th Division)    No. 1—94—4007

Opinion filed December 29, 1995.

Stephen P. Carponelli and Albert M.T. Finch III, both of Carponelli & Krug, P.C., of Chicago, for appellants.

Stevan Krkljes, of O'Connor, Schiff & Myers, of Chicago, for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

On January 25, 1990, plaintiff Benner Root sustained injuries

while moving equipment with a van ramp. On January 21, 1992, he filed a three-count complaint against JH Industries, Inc. (JH). Count I is based on strict products liability, count II seeks relief pursuant to a theory of a breach of express warranty, and count III was brought on behalf of Esther Root and seeks recovery based on loss of consortium.

On November 20, 1992, JH filed a motion for summary judgment, stating that in 1987, JH had purchased all the assets of Copperloy Corporation, which manufactured the ramp. On December 13, 1993, plaintiffs filed an answer to the motion for summary judgment, asserting that JH held itself out as the manufacturer of the van ramp, thereby estopping it from denying that JH is the manufacturer of the ramp. Plaintiff also asserted that JH failed to exercise due diligence in certifying the identity of the manufacturer.

On October 18, 1994, Judge Stephen Schiller granted JH's motion for summary judgment. On appeal, plaintiffs raise three issues: (1) whether the trial court erred in its interpretation of *Hebel v. Sherman Equipment* (1982), 92 Ill. 2d 368, 442 N.E.2d 199, and in its application to the facts of the instant case; (2) whether JH Industries, Inc.'s advertising and promotional materials estop JH from denying that it was the manufacturer of the ramp; and (3) whether JH acted with reasonable diligence in disclosing Copperloy's existence.

BACKGROUND

Plaintiff Benner A. Root was employed by Boyer-Rosen Moving and Storage Company. On January 25, 1990, plaintiff moved and unloaded material from a moving truck at or near the 2600 block of north Clark Street in Chicago, Illinois. Plaintiff used a van ramp to transport the materials. Snow and ice began to collect on the van ramp, and while plaintiff was moving the equipment up the ramp, he slipped and fell, injuring himself.

On January 21, 1992, plaintiffs filed a complaint against JH Industries. The complaint alleged that the van ramp was not reasonably safe in design and manufacture in one or more of the following respects: (a) it failed to contain any warnings to the user of the danger of slippage that could result when water, snow or ice accumulated on the surface of the van ramp, rendering the van ramp unreasonably dangerous; (b) it failed to contain a nonslip surface or strips, rendering the van ramp unreasonably unsafe and dangerous for its intended use; (c) it failed to contain any warnings to the user of the propensity of the van ramp to become slippery if exposed to the weather; (d) it failed to specify and warn of the appropriate angle of the van ramp and the ground; and (e) it failed to specify and warn of the height

limitation for the use of the van ramp from the rear or side of a truck.

On November 20, 1992, JH filed a motion for summary judgment based on an affidavit of the president of JH, asserting that JH did not manufacture the van ramp. JH stated that the van ramp was manufactured by the Copperloy Corporation (Copperloy). In 1987, JH purchased all the assets of Copperloy. The sale included the right to use the Copperloy trademark and the right to continue to manufacture products previously manufactured and marketed by Copperloy. JH's records revealed that Copperloy sold the van ramp to the Iden Company on September 21, 1981.

In response to the motion for summary judgment, plaintiffs offered evidence of their contention that JH held itself out as the manufacturer of the ramp. A catalog distributed by JH was attached to plaintiffs' response. On the first page of the catalog, the Copperloy trademark is placed next to "JH Industries, Inc." On the last page, the Copperloy trademark is placed directly above "JH Industries, Inc." On the second page, JH states "Quality *** Another word for Copperloy for over 30 years." JH also states in the catalog: "Areas which are too confined or crowded for efficient flow of freight and materials can be converted into productive space with the appropriate equipment from JH Industries." The catalog also contains a picture of individuals working on equipment bearing only the Copperloy trademark.

On October 18, 1994, Judge Stephen Schiller granted JH's motion for summary judgment, finding that JH was not the apparent manufacturer of the van ramp. Plaintiffs appeal.

We affirm.

OPINION

I

Appellate review of an entry of summary judgment is *de novo.* (*Sandstrom v. De Silva* (1994), 268 Ill. App. 3d 932, 935, 645 N.E.2d 345.) The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. (*Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 517, 622 N.E.2d 788.) Summary judgment is proper only where the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact. The moving party is then entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1992); *King v. Allstate Insurance Co.* (1994), 269 Ill. App. 3d 190, 191, 645 N.E.2d 503.

The use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit. However, it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. (*Gilbert*, 156 Ill. 2d at 518.) Where doubt exists as to the right of summary judgment, the wiser judicial policy is to permit resolution of the dispute by trial. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer* (1994), 158 Ill. 2d 240, 249, 633 N.E.2d 627.

We first note that in product liability actions, the public policy rationale that justifies imposing strict liability on manufacturers as well as sellers, suppliers, wholesalers, distributors, and even lessors, is based on the fact that these entities, as part of the chain of distribution, are involved in and reap a profit from the placement of the allegedly defective product into the stream of commerce. (*Hebel*, 92 Ill. 2d at 378-79.) Even parties who are not within the actual chain of distribution, but who play an integral role in the marketing enterprise of an allegedly defective product and participate in the profits derived from placing the product into the stream of commerce, are held liable under the doctrine of strict liability. *Bittler v. White & Co.* (1990), 203 Ill. App. 3d 26, 29-30, 560 N.E.2d 979; see *Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, 33, 458 N.E.2d 1331 (where company that bought stock of the manufacturer of a defective boat was liable for plaintiff's injuries because company received economic benefit from the sale of the boat).

■ In the instant case, it is evident from the record that JH did not place the particular van ramp in question in the stream of commerce. JH purchased all the assets of Copperloy in 1987. However, JH's records reflected that the van ramp was sold to the Iden Company in 1981. Therefore, the van ramp was not a part of the assets that JH bought in 1987. JH could not be held liable for the alleged defect in the van ramp since it neither placed the van ramp in the stream of commerce nor participated in the profits derived from placing it in the stream of commerce.

Plaintiffs contend, however, that JH could be held liable under the apparent manufacturer doctrine. Under this doctrine, a company that holds itself out to the public as the manufacturer of a product is liable for the injuries caused by that product if it is found to be unreasonably dangerous. (*Ogg*, 121 Ill. App. 3d at 32.) "The primary rationale for imposing liability on the apparent manufacturer of a defective product is that it has induced the *purchasing public* to believe that it is the actual manufacturer, and to act on this belief— that is, to *purchase the product in reliance* on the apparent manufacturer's reputation and skill in making it." (Emphasis in original.)

(*Hebel*, 92 Ill. 2d at 375.) It is thus apparent that whether a holding out has occurred must be judged from the viewpoint of the purchasing public and in light of circumstances as of the time of purchase. (*Hebel*, 92 Ill. 2d at 375.) This rationale has also been extended to the nonpurchasing public. (See *Hebel*, 92 Ill. 2d at 375-76.) Another justification is where a defendant puts out a product as its own and the purchaser has no means of ascertaining the identity of the true manufacturer. Thus, it would be fair to impose liability on the party whose actions effectively conceal the true manufacturer's identity. *Hebel*, 92 Ill. 2d at 372.

Plaintiffs argue that JH Industries is estopped from denying that it is the manufacturer of the van ramp because it held itself out to the public through advertisements and promotions that it was the manufacturer of the Copperloy van ramp in question. A defendant that advertises itself as the maker of a product may be found to have held itself out to the public as the manufacturer if the advertising was such as to lead a reasonable purchaser to believe that the defendant, and not some other party, was the actual manufacturer. *Hebel*, 92 Ill. 2d at 377.

To support this argument, plaintiffs rely on *Hebel*. In *Hebel*, a car wash conveyer injured the plaintiff when his foot got caught in the conveyer's drive chain. The plaintiff filed a complaint against Sherman Equipment for designing, manufacturing and selling the allegedly defective and unreasonably dangerous car washing machine. Haverberg Auto Laundry Equipment Company was a distributor for Sherman Equipment. Sherman manufactured nearly all the equipment that the car wash purchased from Haverberg. However, Sherman did not manufacture the conveyer that injured plaintiff. Instead, the particular conveyer in question was designed and manufactured by Haverberg. Thus, Sherman moved for summary judgment on the ground that it did not manufacture, design or sell the allegedly defective conveyor that injured the plaintiff. In response to this motion, plaintiff asserted that Sherman held itself out to be the manufacturer of the car washing system through a promotional flyer issued by Haverberg. The trial court granted summary judgment.

The Illinois Supreme Court affirmed the trial court. The court first noted that flyers which featured Sherman equipment were prepared by Haverberg. There was also no designation of a manufacturer on the conveyer shown in the flyer. At the bottom of the flyer was the single word "Sherman." On the next line was the name "Haverberg Auto Laundry Equipment Company," with Haverberg's address and phone number. The court held that the flyer's identification of Sherman was weak at best and it clearly identified Haverberg as the

true manufacturer. Furthermore, the court noted that there was no evidence to suggest that Sherman authorized or permitted Haverberg to place its name on the flyer. Thus, the court refused to hold Sherman liable based on Haverburg's representations in its advertising that Sherman was the manufacturer.

As to the application of the apparent manufacturer doctrine in this case, we hold that the pleadings, affidavit and exhibits, considered in the light most favorable to the plaintiff, fail to reveal that JH held itself out to the public as the manufacturer of the van ramp. Plaintiffs attached pages from JH's catalog to the response to the motion for summary judgment. They submit that JH's catalog gives the impression that JH is the manufacturer of the Copperloy ramps it advertises by providing very specific instructions and recommendations for the use of Copperloy equipment. JH placed the Copperloy insignia either next to or above the name "JH INDUSTRIES, INC." Plaintiffs emphasize that the catalog also informs the reader that ramps of sizes other than those listed in the catalog's tables are "available on request." The JH catalog also displays a warning to prevent the improper use of Copperloy ramps and states: "Quality *** Another word for Copperloy for over 30 years." Plaintiffs contend this statement leads the public to assume that JH has been manufacturing Copperloy ramps for over 30 years. They state that this time period includes the manufacture and sale of the defective ramp in question. We disagree.

■ First, the fact that the van ramp that injured Benner Root was sold in 1981 and was never a part of JH's assets is dispositive of this issue. JH did not make any representations regarding this ramp. Because JH was not in existence in 1981 when the ramp was sold, the purchaser of the ramp could not have relied on JH's reputation and skill in making the ramp.

Second, JH did not make any representations to conceal the true manufacturer of the ramp. The brochure that plaintiffs refer to contains both the JH and Copperloy names. It cannot be said that JH knew that the van ramp even existed since it was not a part of the assets that JH purchased from Copperloy. Thus, there could hardly be a concealment by JH of the van ramp manufacturer.

Moreover, although JH manufactures products and uses the Copperloy name, liability still does not attach to JH for a defective product sold by Copperloy in 1981, when JH did not buy Copperloy's assets until 1987. In purchasing Copperloy's assets, JH did not assume Copperloy's liabilities. See *Kaleta v. Whittaker Corp.* (1991), 221 Ill. App. 3d 705, 583 N.E.2d 567.

II

Plaintiffs also argue that JH is estopped from denying that it is the manufacturer of the van ramp because it failed to use reasonable diligence in disclosing Copperloy's existence. Section 2—621(a) of the Illinois Code of Civil Procedure provides in part:

"In any product liability action based in whole or in part on the doctrine of strict liability in tort commenced or maintained against a defendant or defendants other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury ***." (735 ILCS 5/2—621(a) (West 1992).)

Section 2—621(b) also provides that "due diligence shall be exercised by the certifying defendant or defendants in providing the plaintiff with the correct identity of the manufacturer." (735 ILCS 2—621(b) (West 1992).) The purpose of the section 2—621 provision is to facilitate discovery of the manufacturers where such is not known by the injured party. (*Cherry v. Siemans Medical Systems, Inc.* (1990), 206 Ill. App. 3d 1055, 565 N.E.2d 215.) However, plaintiff is required to show some type of actual prejudice stemming from the delay in certifying the identity of the manufacturer. See *Cherry*, 206 Ill. App. 3d at 1061.

Plaintiffs contend that JH violated the provisions of this statute by not disclosing Copperloy's existence for seven months after answering their complaint. They argue that this delay prejudiced them because by the time they learned of Copperloy's existence, Copperloy's insurance coverage had expired and the statute of limitations had run on a potential defendant, the Iden Company.

In its defense, JH relies on *Cherry*. In *Cherry*, the plaintiff contended she was prejudiced by the defendant's failure to timely certify the identity of the manufacturer and by the defendant's failure to correctly identify the manufacturer's name. The court held that these arguments had no merit. The plaintiff refrained from serving the manufacturer merely because she did not wish to undergo the difficulty or incur the expense of serving a foreign defendant. The court also held that although the defendant delayed in filing its section 2—621 motion and certifying the identity of the manufacturer for over one year, plaintiff was not prejudiced. The court stated that the "provision has not been interpreted to mean that a nonmanufacturing defendant must file a section 2—621 motion and affidavit certifying the identity of the manufacturer, if at all, at the time that he answers the complaint." *Cherry*, 206 Ill. App. 3d at 1061.

In the case *sub judice*, plaintiffs were injured on January 25,

1990. They had two years in which to file a complaint against JH. However, they did not file their suit until four days before the running of the statute of limitations. Plaintiffs served JH two days *after* the two-year statute of limitations period had expired. Plaintiffs argue that they were misled by the advertisement that JH was the manufacturer of the defective ramp and had no knowledge of Copperloy's existence until JH disclosed it to them. However, in product liability cases, the product's history is examined to determine who manufactured the product. The fact that Copperloy's name was on the brochure should have put the plaintiffs on notice of the possibility that another company could have manufactured the van ramp.

■ Furthermore, plaintiffs were not prejudiced by JH's delay. By filing the suit so late, plaintiffs did not allow themselves the discovery to which they were entitled. It was, rather, plaintiffs' delay that prevented them from having a cause of action against Copperloy and the Iden Company.

## III

■ Plaintiffs' final argument is that the policy behind the apparent manufacturer doctrine and the Illinois product liability statute is fairness. Thus, they argue that permitting JH to escape liability would be unfair because the law protects plaintiffs who are unsuspecting of the existence of latent manufacturers of products which cause them injury. However, in viewing the affidavit, pleadings, and exhibits in the most favorable light to the plaintiff, we hold that JH did not conceal the identities of the true manufacturer and distributor of the van ramp in the instant case. Thus, JH is entitled to summary judgment as a matter of law.

For the reasons cited herein, the order of the circuit court of Cook County granting summary judgment is affirmed.

Affirmed.

GORDON and McNULTY, JJ., concur.