2021 IL App (1st) 200499-U

SIXTH DIVISION
June 4, 2021

No. 1-20-0499

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| IRENE LYONS and JACOBY RADFORD, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARSHA E. GORENS, M.D., MARSHA GORENS, M.D., GYNECOLOGY & HOROME THERAPY, SOTTOPELLE DISTRIBUTION COMPANY, LLC, THE SOTTOPELLE GROUP, LLC, SOTTOPELLE GLOBAL, LLC, SOTTOPELLE HOLDING CORPORATION, SOTTOPELLE, INC., and SOTTOPELLE NORTH AMERICA, LLC, | ) | No. 17 L 007576 |
| | ) | |
| Defendants | ) | |
| | ) | |
| (SottoPelle Distribution Company, LLC, The SottoPelle Group, LLC, SottoPelle Global, LLC, SottoPelle Holding Corporation, SottoPelle, Inc., and SottoPelle North America, LLC, Defendants-Appellees). | ) | Honorable Brendan A. O'Brien, Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Circuit court did not abuse its discretion when it denied leave to file amended complaint; affirmed.

¶ 2    Plaintiffs, Irene Lyons and Jacoby Radford, appeal the circuit court's denial of leave to file an amended complaint. On appeal, plaintiffs contend that the circuit court abused its discretion because the applicable factors favored allowing the amendment. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    The SottoPelle defendants (collectively known as SottoPelle) promote the use of hormone replacement therapy using bioidentical hormone infused pellets (hormone pellets). The SottoPelle entities were managed by Dr. Gino Tutera, who passed away in 2015, and his wife, CarolAnn Tutera. Lyons was implanted with hormone pellets by Dr. Marsha Gorens, who attended SottoPelle educational conferences and was a SottoPelle Certified Physician.[1] Lyons was later diagnosed and treated for breast cancer. As the case progressed, plaintiffs changed their theory of SottoPelle's liability. In plaintiffs' original complaint, they asserted that SottoPelle designed, manufactured, and sold hormone pellets. In a proposed amended complaint, plaintiffs asserted that SottoPelle was liable as an apparent manufacturer and under an enterprise theory.

¶ 5                    A. Original Complaint and Summary Judgment

¶ 6    Plaintiffs' original complaint, filed on July 27, 2017, asserted in part causes of action for negligence and strict products liability and alleged that SottoPelle failed to warn Lyons of the risks, side effects, and/or complications of its hormone pellets. Plaintiffs alleged that SottoPelle "was and is engaged in the business of designing, manufacturing, and selling" hormone pellets. Plaintiffs further stated that on three occasions in 2014 and 2015, hormone pellets manufactured and sold by SottoPelle were implanted into Lyons. Around July 31, 2015, a general surgeon recommended to

_____

[1] Dr. Gorens is not part of this appeal.

Lyons that the hormone pellets be removed because of an increased risk of cancer growth. According to plaintiffs, Dr. Gorens advised Lyons that the hormone pellets could not be removed. Lyons, who had a family history of breast and ovarian cancer, was later diagnosed and treated for breast cancer. Plaintiffs asserted that when the hormone pellets left SottoPelle's control, SottoPelle knew or should have known that its product was unreasonably dangerous.

¶ 7 On November 14, 2017, SottoPelle filed a motion to dismiss for lack of personal jurisdiction, stating in part that it did not design, sell, manufacture, or distribute hormone pellets. Attached to the motion was an affidavit from CarolAnn Tutera, who averred that she was the CEO of SottoPelle and SottoPelle did not design, manufacture, sell, or distribute hormone pellets in Illinois or any other state.

¶ 8 On January 2, 2018, the circuit court allowed plaintiffs to issue discovery and conduct depositions limited to the issues relevant to SottoPelle's motion to dismiss.

¶ 9 On January 23, 2018, SottoPelle served answers to plaintiffs' special interrogatories. Responding to the question of whether any of the SottoPelle entities were the manufacturer of the hormone pellets used to treat Lyons, SottoPelle stated:

> "No. None of the SottoPelle Defendants are manufacturers of hormone pellets nor did they manufacture the pellets at issue. The SottoPelle Defendants have no knowledge of who manufactured the pellets at issue. The SottoPelle Defendants are familiar with Solutions Pharmacy in Tennessee as a manufacturer of pellets but cannot say for certain that they manufactured the pellets at issue in this case."

¶ 10 Also in January 2018, Dr. Gorens served answers to plaintiffs' supplemental interrogatories and requests for production. Asked to identify the manufacturer of the hormone pellets used to

treat Lyons, Dr. Gorens stated, "Solutions Pharmacy, 5517 Little Debbie Parkway, Collegedale, TN 37315; and Belmar Pharmacy, 12860 W. Cedar Drive, Suite 210, Lakewood, CO 80228."

¶ 11     At CarolAnn Tutera's January 24, 2018, deposition, she stated that she was the CEO of the SottoPelle entities and her late husband, Gino Tutera, had named SottoPelle. Asked what the lawsuit was about, CarolAnn replied, "The only thing I understand is that she thinks SottoPelle makes pellets and we don't." According to CarolAnn, many of the SottoPelle entities "were set up and they are not used. *** [T]here's nothing in them."[2] CarolAnn stated that she could not discuss Dr. Gorens's purchase of hormone pellets because CarolAnn did not purchase pellets for Dr. Gorens, did not sell pellets, and SottoPelle did not make pellets. CarolAnn stated that after completing the SottoPelle training program, physicians have to contact a pharmacy to treat patients. Physicians are given names for three or four pharmacies, including Solutions Pharmacy, a pharmacy in Florida, and others that CarolAnn could not recall.

¶ 12     On February 2, 2018, plaintiffs filed a motion to strike SottoPelle's motion to dismiss. Plaintiffs stated that when CarolAnn appeared for her deposition, she had done no investigation about SottoPelle and had no knowledge about what the SottoPelle entities were incorporated to do.

¶ 13     The record includes the original answer and counterclaims of Gino Tutera, CarolAnn Tutera, and two SottoPelle entities from litigation in 2012 in Texas (the *Donovitz* litigation). The pleading alleged in part as follows. Around 2002, Gino Tutera and CarolAnn Tutera developed a program of bio-identical pellet delivery hormone replacement services and products, branded as SottoPelle Therapy or SottoPelle Program. The Tuteras marketed and licensed their program to medical groups, physicians, and medical professionals. A SottoPelle entity operated a dosing

---

[2] The SottoPelle entities that CarolAnn Tutera referred to during this portion of her deposition were SottoPelle Distribution Company, LLC, The SottoPelle Group, LLC, SottoPelle Global, LLC, SottoPelle Holding Corporation, and SottoPelle North America, LLC.

website, "which [used] proprietary formulas and calculations for determining the appropriate dosage of its product for use by its licensees." The dosing formulas and calculations were trade secrets. A counterdefendant in the case, Dr. Gary Donovitz, had entered into an operating agreement for an entity whose purpose was to market and sell the SottoPelle Program to medical groups, physicians, and medical professionals located in Texas. Allegedly, Donovitz and other counterdefendants breached the operating agreement. The pleading stated in part that Donovitz had "ordered and used substandard, compounded pharmaceutical substances in the production of SottoPelle products."

¶ 14    Returning to this case, in a March 2, 2018, filing, plaintiffs asserted that CarolAnn's deposition testimony conflicted with the *Donovitz* pleading. Responding to a contention that no more discovery about personal jurisdiction was needed because SottoPelle allegedly did not make hormone pellets, plaintiffs asserted, "It is well-settled that a non-manufacturer is a proper defendant under a products liability theory if it exercised some significant control over the design or manufacture of the product, provided instructions or warnings to the manufacturer relative to the alleged defect, had actual knowledge of the defect, or created the defect." SottoPelle later withdrew its motion to dismiss for lack of personal jurisdiction.

¶ 15    Dr. Gorens's deposition took place on April 25, 2018, where she stated in part as follows. SottoPelle trained physicians on bioidentical hormones. SottoPelle and Solutions Pharmacy put together conferences, and Dr. Gorens first attended a training conference in 2008, where she was introduced to bioidentical hormones and practiced inserting hormone pellets. Dr. Gorens was also given generalized information on dosing. Dr. Gorens was unsure if SottoPelle provided dosing instructions, as "some of that came from the pharmacist, from Solutions Pharmacy." The pellets had to be manufactured by a licensed pharmacist and SottoPelle was not a pharmacist. SottoPelle

did not require that physicians use a certain manufacturer of hormone pellets, but because Solutions Pharmacy was at the conference and providing training, "everybody used Solutions Pharmacy." It was encouraged that the physicians use Solutions Pharmacy "because they were there." Dr. Gorens acknowledged that at one conference, she won a Top 20 sales award from Solutions Pharmacy. All SottoPelle Certified Physicians were eligible for the award if they purchased pellets through Solutions Pharmacy. Sometime in 2013, Dr. Gorens stopped using Solutions Pharmacy and switched to Belmar Pharmacy, which was recommended to her by another physician who used hormone pellets. Dr. Gorens did not know if SottoPelle designed the hormone pellets. When Dr. Gorens started using hormone pellets in her practice, she would sometimes consult with Gino Tutera, who would provide instructions on certain lab values and appropriate dosing.

¶ 16    Upon completing the training in 2008, Dr. Gorens received a certificate of completion and became a SottoPelle Certified Physician. Dr. Gorens paid a yearly fee for the designation. SottoPelle provided physicians with consent forms and other paperwork to help with documentation. Dr. Gorens did not generally inform patients that she was a SottoPelle Certified Physician. Prior to ending her relationship with SottoPelle in 2015, Dr. Gorens was listed on the SottoPelle website and was represented as a SottoPelle Certified Physician on a location map. When SottoPelle advertised, "they would draw patients to their website." Dr. Gorens had patients who found her through SottoPelle's website, but Lyons did not find Dr. Gorens that way.

¶ 17    At a subsequent deposition, Dr. Gorens recalled that when she started implanting pellets, she did not believe that SottoPelle manufactured the pellets and knew that the pellets had to be produced by a pharmacist. Dr. Gorens explained that Solutions and Belmar are compound

pharmacies, meaning that they put a compound of hormones in a requested form, such as creams, pellets, or drops.

¶ 18 In a filing dated July 17, 2018, plaintiffs took issue with SottoPelle "continually [arguing] that they are not the manufacturer of the hormone therapy pellets at issue." According to plaintiffs, SottoPelle's argument was premature because SottoPelle had not yet answered written discovery and there was no pending motion about the merits of plaintiffs' case against SottoPelle. Plaintiffs stated that SottoPelle's "role providing hormone therapy pellets to physicians such as *** Dr. Gorens to use on patients such as *** Lyons will be clearly laid out at the appropriate time. The evidence already available to the parties speaks for itself."

¶ 19 SottoPelle's answers to plaintiffs' interrogatories and responses to plaintiffs' first request to produce were served on plaintiffs' counsel on July 23, 2018, and stated in part as follows. SottoPelle did not ever design or modify the design or engineering of hormone pellets, did not ever own or license a patent on hormone pellet design or a hormone pellet component, and did not ever own or license a trademark on a hormone pellet brand name. SottoPelle conducted informational seminars about hormone therapy generally and generally suggested and highlighted the types of information that physicians should consider when administering hormonal pellet therapy. SottoPelle also provided general examples of hormonal therapy dosage that was used for certain patients in the past, as well as outlined and demonstrated how hormone pellets are implanted under the skin. SottoPelle did not know who designed or manufactured the product. In a response to a request for documents and/or other evidence of payment, benefit, cash, monies, kickbacks, and/or incentives between SottoPelle and any pharmacy or compounding pharmacy, SottoPelle stated that it did not receive payments or "kick-backs" from any product manufacturer.

¶ 20    On October 10, 2018, SottoPelle filed a motion for summary judgment, asserting in part that there was no genuine issue of material fact because SottoPelle did not design, manufacture, or sell hormone pellets. Further, the subject pellets were never in SottoPelle's control.

¶ 21    Lyons's deposition took place on November 2, 2018, where she stated in part as follows. In October 2013, Lyons made an appointment with Dr. Gorens after a co-worker recommended her. Lyons did not visit the SottoPelle website before meeting Dr. Gorens, though she visited Dr. Gorens's website. At her first appointment, Dr. Gorens explained how the hormone pellets would be inserted and released. Lyons signed consent forms that she interpreted to mean that SottoPelle provided, designed, and manufactured the pellets, as well as trained and certified Dr. Gorens to insert them. However, no one told Lyons that SottoPelle manufactured or designed hormone pellets and Dr. Gorens did not indicate that the hormone pellets were designed, manufactured, or sold by SottoPelle. Lyons's consent forms are in the record. A Consent for Hormone Implantation included SottoPelle's logo in the corner, as did a Female Estradiol and Testosterone Acknowledgement Insertion Form. The latter form stated that there would be a charge depending on the number of hormone pellets received. Another form, which included Belmar Pharmacy's logo and contact information at the bottom, authorized Belmar Pharmacy to ship Lyons's compounded pellet prescriptions to Dr. Gorens.

¶ 22    An affidavit obtained by SottoPelle dated January 31, 2019, from the co-owner of Solutions Pharmacy averred that Solutions dispensed hormone pellets based on prescriptions written by Dr. Gorens on April 30, 2014. Another affidavit obtained by SottoPelle dated February 12, 2019, from the CEO of Belmar Pharmacy stated that between October 29, 2013, and July 1, 2015, Belmar dispensed hormone pellets based on prescriptions written by Dr. Gorens.

¶ 23     In a filing relating to a discovery matter dated February 13, 2019, plaintiffs asserted that they had not yet received full and complete answers to written discovery and SottoPelle had stonewalled the entire discovery process. According to plaintiffs, SottoPelle "[pointed] the finger at another entity whom [it contended] manufactured the pellets at issue." Plaintiffs also stated that products liability was not exclusive to the manufacturer. Plaintiffs noted that in her deposition, Dr. Gorens "testified extensively about [SottoPelle's] participation in this matter, and the stream of commerce." Plaintiffs further stated that their position would be addressed at length when they responded to the summary judgment motion. Plaintiffs added that even if being a manufacturer was dispositive, SottoPelle could not rely on CarolAnn Tutera's deposition testimony to disclaim it was the manufacturer because her testimony was unreliable given her statements in the *Donovitz* pleading.

¶ 24     At a hearing on March 14, 2019, plaintiffs' counsel stated that Solutions and Belmar could not be defendants due to the statute of limitations. Plaintiffs' counsel added, "I guess we can go the parent manufactured route if we have to, if we have to bring them in, and the statute of limitations will dismiss them." Plaintiffs confirmed that the statute of limitations had run for the pharmacies when Dr. Gorens testified at her deposition. Plaintiffs' counsel also stated that he was examining what agreements SottoPelle had with Solutions and Belmar. Asked how that was relevant, plaintiffs' counsel responded, "Well, I guess we'll have to figure out exactly how entwined they are." Plaintiffs' counsel queried why Solutions was taking part in the seminars with SottoPelle and whether SottoPelle was "just an arm of Solutions."

¶ 25     At a hearing related to discovery matters on April 8, 2019, the court asked why plaintiffs should be allowed to pursue additional discovery from SottoPelle. Plaintiffs' counsel stated:

"So just saying that we can't do any of this discovery because we're not the manufacturer, I still think we're entitled to do this. *** [D]uring our phone call, *** [SottoPelle's counsel] kept on asking why don't you just subpoena this information that you're asking from me from the manufacturers themselves, from Solutions and Belmar Pharmacies. Well, they're the Defendant in this case, *** I should be able to ask them to produce this documentation first."

Pressed for his theory of the case, plaintiffs' counsel suggested that SottoPelle could have exercised control over the hormone pellets, in that it had a dosing website, trained physicians to use the hormone pellets, and directed physicians to use a particular pharmacy. Plaintiffs' counsel stated that if he could prove that SottoPelle had control over the product, then he could prove that SottoPelle should be in the case, even if it was not "the exact manufacturer." Plaintiffs' counsel also stated that he could not amend the complaint while the summary judgment motion was pending. According to plaintiffs' counsel, the motion for summary judgment was premature because plaintiffs did not have all the evidence needed to respond.

¶ 26    On August 6, 2019, plaintiffs filed an emergency motion related to the briefing schedule for the summary judgment motion. Plaintiffs stated in part that subpoenas had been issued to Solutions and Belmar, but the pharmacies needed more time to comply.

¶ 27    Plaintiffs filed their response to the summary judgment motion on August 15, 2019, asserting that SottoPelle should be held liable under two theories: 1) as an apparent manufacturer of hormone pellets, and 2) for playing an integral role in the overall producing and marketing of hormone pellets, known as enterprise theory. Plaintiffs stated that whether SottoPelle held itself out as the apparent manufacturer was a question for the trier of fact. Further, Lyons's belief that SottoPelle manufactured the hormone pellets was controlling because she was the injured party.

According to plaintiffs, it was reasonable for Lyons to believe that SottoPelle manufactured the hormone pellets due to the multiple consent forms she read and signed, which bore SottoPelle's logo and were provided to Dr. Gorens by SottoPelle.

¶ 28    As for their second theory of liability, plaintiffs asserted that through its seminars, website, and appearances on television shows, SottoPelle was an integral part of the marketing for hormone pellets and shared in the profits. Further, by certifying physicians and licensing them to use the SottoPelle trademark, SottoPelle created the public impression that SottoPelle was the actual manufacturer and induced consumers to rely on the appearance that the trademark owner was responsible for the product and stood behind it.

¶ 29    In reply, SottoPelle stated that the court did not need to consider whether SottoPelle was liable as an apparent manufacturer or under enterprise theory because those theories were not pled in the complaint. Still, summary judgment was warranted even if the new theories were considered. SottoPelle asserted that the belief of the purchasing public is relevant to establish liability as an apparent manufacturer, and here, Dr. Gorens was the purchasing public. SottoPelle noted that Dr. Gorens purchased the pellets and inserted them into Lyons, as well as testified in her deposition that she did not believe that SottoPelle manufactured hormone pellets. SottoPelle further asserted that there was no competent or admissible evidence that SottoPelle played any role in the design, manufacture, distribution, or sale of the hormone pellets, much less than integral role in the overall producing and marketing enterprise that placed the hormone pellets in the stream of commerce. SottoPelle also stated that there was no competent or admissible evidence that SottoPelle received payments from Solutions, Belmar, or Dr. Gorens for their sale of the subject pellets or hormone pellets generally.

¶ 30    On September 4, 2019, the court granted SottoPelle's motion for summary judgment. At the hearing, the court stated that there was no genuine issue of material fact about what was actually pleaded in the complaint. Plaintiffs' counsel conceded that SottoPelle did not design, manufacture, or sell hormone pellets. Explaining the two new theories, plaintiffs' counsel asserted that plaintiffs met the requirements to amend the complaint. The court predicted that SottoPelle would assert that the request was untimely, "but I can't speak for [SottoPelle] so I'm not giving you a leave for pleading."

¶ 31    Still, the court held argument "as if there was a claim out there on this." Plaintiffs' counsel contended that for the apparent manufacturer claim, Lyons was the purchasing public because the hormone pellets were marketed to patients and physicians. The court disagreed, finding that the purchasing public was Dr. Gorens, and moreover, there was no indication that Dr. Gorens specifically relied on the hormone pellets being made by SottoPelle. Turning to the enterprise theory of liability, plaintiffs' counsel stated that the day after filing his summary judgment response, he received an affidavit containing "years of purchases made by Gino Tutera from SottoPelle for millions and millions of dollars['] worth of pellets." Plaintiffs' counsel further stated that SottoPelle charged physicians an annual fee to be SottoPelle Certified Physicians and introduced them to Solutions Pharmacy, which gave Dr. Gorens almost all of the pellets that were implanted in Lyons. Further, SottoPelle marketed the product online to the public and physicians and licensed physicians to use a trademark on office forms. According to plaintiffs' counsel, all of those acts derived an economic benefit for SottoPelle and the hormone pellet industry. Ultimately, the court did not find there was a genuine issue of material fact as to enterprise theory, but left open the option for plaintiffs to file a motion for leave to file an amended complaint.

¶ 32                    B. Proposed Amended Complaint

¶ 33    On October 4, 2019, plaintiffs filed a motion for leave to file a first amended complaint, asserting in part that they had adduced additional evidence that was not previously before the court and supported liability under enterprise theory. Pursuant to a subpoena from plaintiffs, Solutions produced 2013 tax documents showing that Solutions paid Gino Tutera and CarolAnn Tutera over $200,000 each. Solutions also produced receipts for hormone pellets sold to Gino Tutera and CarolAnn Tutera in quantities far greater than any one physician could insert himself. Further, Solutions provided order forms from 2012 that revealed that Gino Tutera was credited over $70,000 in direct purchases from Solutions, meaning that he received an exorbitant number of hormone pellets free of charge. Plaintiffs also contended that an amendment would not create surprise or prejudice because SottoPelle asserted from the outset that it did not manufacture or distribute hormone pellets. Also, discovery had not closed and SottoPelle could adequately prepare a defense. Plaintiffs further stated that they did not subpoena the pharmacies until May and July 2019, and moreover, they did not obtain the records from Solutions until the day after filing the summary judgment response. Plaintiffs also justified their waiting to amend the complaint by pointing to "a multitude of evidence, all put into existence by SottoPelle," which had implicated SottoPelle as the actual manufacturer, including the pleading in *Donovitz*, SottoPelle's website, and SottoPelle's online videos.

¶ 34    The proposed amended complaint alleged that SottoPelle "held and holds itself out as an entity engaged in the business of designing, manufacturing, and selling, among other things, estrogen and testosterone bio-identical hormone replacement therapy pellets," and that SottoPelle "played an integral role in the marketing of bio-identical hormone therapy replacement pellets and participated in the profits of placing bio-identical hormone replacement therapy pellets into the stream of commerce." In part, the proposed amended complaint further stated:

- SottoPelle was compensated by Solutions through payments made by Solutions to Gino Tutera and CarolAnn Tutera.

- SottoPelle purchased the hormone pellets through Gino Tutera and CarolAnn Tutera.

- SottoPelle distributed hormone pellets to physicians.

- SottoPelle trained physicians regarding hormone pellets.

- SottoPelle marketed SottoPelle Certified Physicians on its website to the public.

- SottoPelle licensed SottoPelle Certified Physicians to use certain forms in their practice that bore the SottoPelle logo.

- SottoPelle certified Dr. Gorens in regard to hormone pellets and Dr. Gorens held herself out as a SottoPelle Certified Physician.

¶ 35    Attached to plaintiffs' motion was a subpoena to Solutions Pharmacy dated May 29, 2019, and a letter from plaintiffs' counsel to Belmar Pharmacy dated July 3, 2019, stating that a copy of a subpoena was enclosed. The documents received from Solutions included 1099-MISC forms, sales receipts, and transfer documents. The 1099-MISC forms were issued to Gino Tutera and CarolAnn Tutera in 2013 and reflected $211,500 and $210,000 in nonemployee compensation, respectively. The receipts indicated sales to Gino Tutera for approximately $490,000 in hormone pellets and to CarolAnn Tutera for $504 in hormone pellets. The transfer documents were for hormone pellets from Solutions to Gino Tutera that were designated as "Safetynet/Reserve," "Chandler," or "Shea." In some instances, the transfer documents indicated that Gino Tutera was credited for the cost.

¶ 36    Meanwhile, the case was given a trial date of February 1, 2021.

¶ 37    In response to plaintiffs' motion, SottoPelle asserted that the proposed amendment did not cure the defect in the original complaint and another affidavit from Solutions that was procured by

SottoPelle rendered baseless plaintiffs' enterprise theory claim. SottoPelle further stated that plaintiffs raised alternative theories of liability in a brief filed on February 13, 2019, but waited until after losing the motion for summary judgment to amend the complaint.

¶ 38    Dated October 30, 2019, the aforementioned affidavit that SottoPelle procured from Solutions stated in part as follows. SottoPelle was not involved in the design, production, or sale of hormone pellets compounded by Solutions and sold to Dr. Gorens. The 1099-MISC forms reflected payments to Gino Tutera and CarolAnn Tutera in their personal capacities for their appearances and speeches at seminars sponsored by Solutions in 2013. During 2012 and 2013, Gino Tutera's medical practice had multiple officers and multiple practitioners. As for the transfer documents, "Safetynet/Reserve" was a term used by physicians to indicate reserves to replace pellets damaged in shipment or when supply is interrupted. Further, the credits given to Gino Tutera were for speaking fees from his appearances that were sponsored by Solutions. There were no payments from Solutions to any of the SottoPelle entities—only payments from Solutions to Gino Tutera and CarolAnn Tutera in their personal capacities.

¶ 39    At the hearing on plaintiffs' motion, plaintiffs' counsel asserted that evidence supporting an enterprise theory of liability was new, and plaintiffs now had evidence of payment and kickbacks. Plaintiffs' counsel also stated that discovery disputes prevented plaintiffs from amending the complaint earlier. Further, plaintiffs' counsel had believed the original complaint could be valid based on evidence that SottoPelle designed the pellets. In response, SottoPelle's counsel asserted in part that "the clock started ticking" in January 2018 to amend the complaint, when Dr. Gorens stated in an interrogatory that the hormone pellets came from Solutions and/or Belmar.

¶ 40    On December 6, 2019, the court denied plaintiffs leave to file an amended complaint. In an oral ruling, the court stated that the amendment cured the defects in the original complaint, noting that the complaint had to be "close enough to put the defendant on notice as to what your theory is." However, the amendment would create surprise or prejudice because SottoPelle would have to proceed on theories that were not presented in the pleadings. The court further found that the amendment was untimely, stating that plaintiffs had known about the alternative theory for a while and had not sought leave to amend until after summary judgment. Also, the case had been pending for two years. The court stated that plaintiffs should have sought leave to amend close in time to when plaintiffs knew who the actual manufacturers were and "not at this stage in the litigation." The court entered a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying either enforcement or appeal or both.

¶ 41    On January 3, 2020, plaintiffs filed a motion to reconsider, asserting in part that the court had emphasized the case's age without considering that trial was 14 months away at the time. Plaintiffs stated that they first tried to amend the complaint at the summary judgment hearing on September 4, 2019, which was before the case was given a trial date. Plaintiffs also raised judicial estoppel, contending that SottoPelle took a position in the *Donovitz* litigation that hormone pellets were its product, but now claimed that SottoPelle did not design, manufacture, or sell hormone pellets. Plaintiffs further asserted that SottoPelle's pleading in *Donovitz* led them to believe that SottoPelle designed, manufactured, or sold hormone pellets. Plaintiffs also stated that they did not have evidence supporting the new theories until the day after filing their summary judgment response.

¶ 42    In response, SottoPelle asserted in part that plaintiffs waived the judicial estoppel claim because it appeared for the first time in the motion to reconsider. SottoPelle further stated that even

if the tax forms were probative of enterprise theory liability—a point that SottoPelle did not concede—plaintiffs had no excuse for waiting so long to subpoena Solutions. Plaintiffs could have subpoenaed Solutions and Belmar as early as January 2018 to investigate their roles.

¶ 43    After a hearing, the court denied plaintiffs' motion to reconsider. Plaintiffs timely appealed.

¶ 44                                II. ANALYSIS

¶ 45    On appeal, plaintiffs contend that the circuit court should have granted them leave to file an amended complaint. Section 2-1005(g) of the Code of Civil Procedure (Code) states, "Before or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2-1005(g) (West 2016). Although litigants do not have an absolute right to amend their complaint, "Illinois law supports a liberal policy of allowing amendments to the pleadings so as to enable parties to fully present their alleged *** causes of action." *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412, 417 (2006). When ruling on a postsummary judgment motion to amend, the court considers whether: 1) the proposed amendment would cure the defective pleading; 2) the proposed amendment would create prejudice or surprise to other parties; 3) the proposed amendment is timely; and 4) there were previous opportunities to amend. *United Conveyor Corp. v. Allstate Insurance Co.*, 2017 IL App (1st) 162314, ¶ 36 (citing *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992)). The party seeking leave to amend has the burden to demonstrate that all four factors favor the requested relief. *Id.* We review the circuit court's ruling on whether to allow or deny an amendment for an abuse of discretion (*Cook ex rel. Cook v. AAA Life Insurance Co.*, 2014 IL App (1st) 123700, ¶ 40), which occurs when the court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take its view (*Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23).

¶ 46                        A. Cure the Defective Pleading

¶ 47    We consider each of the four *Loyola Academy* factors in turn, beginning with whether plaintiffs' proposed amendment would cure the defective pleading. The parties do not need to go through the process of filing an amended pleading and then testing its sufficiency with a motion to dismiss. *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004). The court may consider the ultimate efficacy of a claim as stated in a proposed amended pleading. *Id*. Further, the court may deny leave to amend where the allegations in the complaint are superseded by extrinsic facts that have already been submitted and "would militate for summary judgment." *Lajato v. AT&T, Inc.*, 283 Ill. App. 3d 126, 139 (1996) (leave to amend properly denied where testimony and evidence presented fell short of establishing a genuine issue of material fact). See also *Cook ex rel. Cook*, 2014 IL App (1st) 123700, ¶ 40 (section 2-1005(g) of the Code "does not allow a plaintiff to amend a cause of action on which the defendant was granted summary judgment unless depositions and affidavits indicate that the plaintiff can replead the claim under another theory").

¶ 48    To review, plaintiffs' original complaint alleged that SottoPelle designed, manufactured, and sold hormone pellets. Plaintiffs eventually conceded that this was not the case. Plaintiffs contend that their proposed amendment cured this defect by removing references to SottoPelle itself manufacturing hormone pellets, and instead alleging that SottoPelle was liable as an apparent manufacturer and under enterprise theory. As for being an apparent manufacturer, plaintiffs note that their amended complaint states that SottoPelle marketed hormone therapy and SottoPelle Certified Physicians on its consumer-oriented website and provided consent forms for physicians to use. Plaintiffs also argue that Lyons was the purchasing public and she signed consent and acknowledgement forms that bore SottoPelle's logo.

¶ 49    Under the apparent manufacturer doctrine, a company that holds itself out to the public as the manufacturer of a product is liable for the injuries caused by the product if it is found to be unreasonably dangerous. *Root v. JH Industries, Inc.*, 277 Ill. App. 3d 502, 506 (1995). Whether a holding out occurred must be judged from the viewpoint of the purchasing public and in light of circumstances at the time of purchase. *Id.* at 507. The primary rationale for imposing liability on an apparent manufacturer is that it has induced the purchasing public to believe "that it is the actual manufacturer, and to act on this belief—that is, to purchase the product in reliance on the apparent manufacturer's reputation and skill in making it." (Emphasis omitted.) *Hebel v. Sherman Equipment*, 92 Ill. 2d 368, 375 (1982).

¶ 50    Cases have found that the purchasing public is the person or entity actually buying the allegedly defective product, but not in all circumstances. In *Hebel*, the purchasing public for a piece of car-washing equipment was not "a casual observer, viewing the machines after their purchase and installation," but rather "a reasonable purchaser of car-washing equipment," which was the service station and car wash at which the injury occurred. *Id.* Similarly, in *Joiner v. Ryder System Inc.*, 966 F. Supp. 1478, 1489 (C.D. Ill. 1996), the purchasing public for a trailer was the plaintiff's employer, who purchased the trailer that caused the subject injury. Yet, in *Sipari v. Villa Olivia Country Club*, 63 Ill. App. 3d 985, 993 (1978), the court found that there was a genuine question of fact as to whether an entity whose logo was on a golf cart held itself out as the golf cart's manufacturer to someone who only rented the cart at a country club. The country club owned the golf cart. *Id.* at 988.

¶ 51    Here, Dr. Gorens placed the actual order for hormone pellets. But the purchasing public was not just physicians. SottoPelle's marketing appeared to induce patients to seek out SottoPelle Certified Physicians on their own. Whether a holding out occurred is an objective inquiry and does

not turn on the individual experience of the plaintiff. See *Root*, 277 Ill. App. 3d at 507 (referring to the viewpoint of the purchasing public and not the particular plaintiff). So, that Lyons did not seek out a SottoPelle Certified Physician herself is not the question. SottoPelle marketed to potential patients on the Internet using a location finder. The identification of SottoPelle with hormone pellet treatment carried over to the doctor's office, where forms with SottoPelle's logo were presented and signed, including one that mentioned a price for hormone pellets. There is at least a genuine question of fact whether SottoPelle held itself out as the manufacturer of hormone pellets to the purchasing public. Plaintiffs' apparent manufacturer claim cures the defective pleading, though as we will discuss below, the circuit court properly denied leave to amend based on the other *Loyola Academy* factors.

¶ 52    Turning to the second grounds for liability raised in the proposed amended complaint, plaintiffs' enterprise theory claim does not cure the defective pleading. Under that doctrine, a party not within the actual chain of distribution, but "who plays an integral role in the marketing enterprise of a defective product and participates in the profits derived from placing the product into the stream of commerce" faces strict liability. *Carollo v. Al Warren Oil Co., Inc.*, 355 Ill. App. 3d 172, 181 (2004). Imposing strict liability "hinges on whether the party in question has any participatory connection, for personal profit or other benefit, with the injury-causing product and with the enterprise that created consumer demand for and reliance upon the product." (Internal quotation marks omitted.) *Bittler v. White & Co.*, 203 Ill. App. 3d 26, 30 (1990). The proposed amended complaint states that SottoPelle was owned by Gino Tutera and CarolAnn Tutera, SottoPelle was compensated by Solutions through payments Solutions made to Gino Tutera and CarolAnn Tutera, SottoPelle purchased hormone pellets through Gino Tutera and CarolAnn Tutera, and SottoPelle distributed hormone pellets to physicians. The evidence in the record does

not support these allegations. Plaintiffs point to the 1099-MISC forms that showed payments to Gino Tutera and CarolAnn Tutera and documents that supposedly indicate that Gino Tutera received a kickback in the form of hormone pellets. Plaintiffs also state that SottoPelle executives spoke at seminars sponsored by Solutions and encouraged physicians to buy pellets from Solutions. However, the payments to Gino Tutera and CarolAnn Tutera were in their personal capacities, and the ordering forms were for Gino Tutera and not SottoPelle. Solutions's affidavit averred that Gino Tutera—again, not SottoPelle—received credits for speaking fees, and Gino Tutera had multiple offices with multiple practitioners. The record supports neither plaintiffs' allegations nor that SottoPelle itself profited from hormone pellets sold by Solutions. Plaintiffs have not established a genuine issue of material fact on their enterprise theory claim and their allegations do not cure the defective pleading.

¶ 53                                B. Prejudice or Surprise

¶ 54     We next to turn to whether the proposed amendment would create prejudice or surprise to SottoPelle, which is the most important factor in the analysis of whether to allow leave to amend. *Lacey v. Perrin*, 2015 IL App (2d) 141114, ¶ 78. Plaintiffs contend that the trial date is of paramount importance when assessing prejudice, and here, the case did not have a trial date when plaintiffs filed their motion for leave to amend. Plaintiffs further argue that there is no surprise or prejudice because they raised the alternate theories in February and March 2019 and in their summary judgment response. Plaintiffs also state that they requested evidence of payments, contracts, agreements, or free pellets received from the compounding pharmacies and SottoPelle responded that there were none, which plaintiffs later learned was untrue. Plaintiffs contend that a party should not be allowed to claim prejudice when the very information supporting the amendment was requested but not provided. Plaintiffs further state that the original and proposed

-21-

amended complaints presented similar legal and factual issues and involve the same evidence, damages, and witnesses.

¶ 55    The stage of litigation at which a proposed amendment is brought is a relevant consideration. *Hartzog v. Martinez*, 372 Ill. App. 3d 515, 525-26 (2007). Although the trial date had not been set when plaintiffs moved to amend, the circuit court properly found surprise or prejudice because plaintiffs delayed presenting their alternative theories until after summary judgment and they could have acted much sooner. Plaintiffs filed their original complaint in July 2017. Plaintiffs were on notice that Solutions was involved in January 2018, when SottoPelle and Dr. Gorens each answered discovery by identifying manufacturers of hormone pellets. At Dr. Gorens's deposition in April 2018, she testified at length about Solutions. Plaintiffs' comments in February, March, and April 2019 suggested that they knew alternative theories were needed to keep SottoPelle in the case. Still, plaintiffs did not subpoena the pharmacies until May and July 2019. Plaintiffs abandoned their original theory when they filed their summary judgment response in August 2019, but still did not file a motion for leave to amend. They only orally requested leave to amend almost two months later, at the September 2019 summary judgment hearing. Finally, plaintiffs filed a motion for leave to amend a month later.

¶ 56    Plaintiffs continued to pursue SottoPelle as an actual manufacturer even as it became increasingly clear that another theory was necessary. Plaintiffs made no attempt to amend their complaint—or even seek discovery from Solutions and Belmar—when they knew an alternate theory was warranted. Allowing an amendment in this circumstance would be prejudicial. See *Geisler v. Everest National Insurance Co.*, 2012 IL App (1st) 103834, ¶ 102 (prejudice found where the plaintiff did not raise new theory for nearly two years since filing, the plaintiff did not try to amend his pleadings until after moving for summary judgment and losing, and the defendants

would be burdened with additional litigation if the plaintiff was allowed to start over based on facts and legal claims previously available to him).

¶ 57    Further, prejudice has been found where the proposed amendment would require a different defense. See *United Conveyor Corp.*, 2017 IL App (1st) 162314, ¶ 40 (prejudice found where the complaint added new allegations and the defendants would have to defend against an entirely different claim after summary judgment had been entered in their favor more than three years after the original complaint was filed); *Cook ex rel. Cook*, 2014 IL App (1st) 123700, ¶ 44 (focus is on whether the proposed amendment alters the nature and quality of proof required for the defendant to defend the claim); *W.E. Erickson Construction, Inc. v. Chicago Title Insurance Co.*, 266 Ill. App. 3d 905, 912 (1994) (prejudice found where new allegations required a substantially different defense which, in turn, required separate investigation). Plaintiffs' proposed amendment includes new allegations about SottoPelle's marketing and relationship with Solutions, a heretofore uninvolved third party. To the extent that plaintiffs argue that SottoPelle hid evidence of a financial relationship with Solutions, that assertion was not borne out by the record, as explained in our discussion of plaintiffs' enterprise theory claim. Plaintiffs could have presented the new theories much sooner by subpoenaing Solutions after Dr. Gorens testified at her deposition about Solutions's involvement. It would be prejudicial to force SottoPelle to essentially start over after plaintiffs made no attempt to involve a third party for over a year after learning about it.

¶ 58          C. Timeliness and Previous Opportunities to Amend

¶ 59    We next consider the final two factors together: whether the proposed amendment was timely and whether plaintiffs had previous opportunities to amend. Plaintiffs state that when they moved to amend, discovery was still open and they had received evidence from Solutions only weeks earlier. Plaintiffs also argue that they diligently prosecuted their case even in the face of

discovery-related obstacles. Plaintiffs assert that they did not want to rely on CarolAnn Tutera's word that SottoPelle did not design, distribute, or sell pellets.

¶ 60    Plaintiff correctly notes that this court has found that the trial date can be a factor in whether an amendment is timely. See *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 796 (2009) (no abuse of discretion in denying leave to file affirmative defense where leave was sought the day before trial). Also significant is whether the party seeking amendment is adding allegations that were previously unavailable. See *United Conveyor Corp.*, 2017 IL App (1st) 162314, ¶ 38 (leave to amend properly denied where nothing in the record revealed that the plaintiff relied on the discovery of any new facts to support request to amend and the amendment relied on facts known to the plaintiff long before it filed its complaint); *Geisler*, 2012 IL App (1st) 103834, ¶ 104 (amendment untimely where there was no newly discovered evidence that was unavailable at an earlier time).

¶ 61    Plaintiffs' summary judgment response belies their claim that the apparent manufacturer claim could not have been asserted earlier. In that response, plaintiffs discussed apparent manufacturer liability. The apparent manufacturer claim does not rely on evidence obtained from the pharmacies and is based on facts that were gleaned well before the pharmacies were subpoenaed. Moreover, section 2-1005(g) of the Code permits plaintiffs to amend the complaint while a summary judgment motion is pending. See 735 ILCS 5/2-1005(g) (West 2016) (a court "shall permit pleadings to be amended" before or after summary judgment is entered). Plaintiffs' request was untimely and the complaint could have been amended earlier. See *Lacey*, 2015 IL App (2d) 141114, ¶ 78 (leave to amend properly denied where the plaintiff amended the complaint six months after learning of new facts and the plaintiff did not attempt to amend her complaint concurrently with response to summary judgment motion); *Hartzog*, 372 Ill. App. 3d at 526 (leave

to amend properly denied where the plaintiffs waited five months after learning of fact supporting amendment, waiting until after summary judgment was resolved).

¶ 62    As for the enterprise theory claim, which relies on evidence obtained from Solutions, plaintiffs have not provided a valid reason for waiting so long to subpoena the pharmacies. Plaintiffs learned of Solutions's involvement in January 2018 and at Dr. Gorens's deposition in April 2018. Belmar was on one of the forms signed by Lyons. Even if plaintiffs did not want to rely on CarolAnn Tutera's statements that SottoPelle did not manufacture hormone pellets, plaintiffs were consistently confronted with information from other sources that indicated a need to subpoena the pharmacies. The enterprise theory claim was untimely and could have been pursued earlier.

¶ 63    Plaintiffs also point to the *Donovitz* pleading as a reason for not seeking amendment earlier. In their opening brief, plaintiffs assert that judicial estoppel binds SottoPelle to their position in *Donovitz*, but plaintiffs appear to retreat from a strict application of judicial estoppel in their reply brief and instead state that judicial estoppel is a reason they did not amend the complaint earlier. Plaintiffs contend that SottoPelle's pleading in *Donovitz* led them to believe that SottoPelle designed, manufactured, or sold hormone pellets.

¶ 64    The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from "deliberately changing positions according to the exigencies of the moment." (Internal quotation marks omitted.) *Seymour v. Collins*, 2015 IL 118432, ¶ 36. For judicial estoppel to apply, the circuit court must determine whether the party to be estopped has: 1) taken two positions; 2) that are factually inconsistent; 3) in separate judicial or quasi-judicial proceedings; 4) intending for the trier of fact to accept the truth of the facts alleged, and 5) succeeded in the first proceeding and received some benefit. *Knott v. Woodstock Farm & Fleet,*

*Inc.*, 2017 IL App (2d) 160329, ¶ 21. "Judicial estoppel must be proved by clear and convincing evidence." *Id*. ¶ 22.

¶ 65     SottoPelle asserts that plaintiffs waived the judicial estoppel argument because they raised it for the first time in their motion to reconsider. See *Continental Casualty Co. v. Security Insurance Co. of Hartford*, 279 Ill. App. 3d 815, 821 (1996) (declining to consider on review an argument that was raised for the first time in a motion to reconsider). Even if the judicial estoppel argument were preserved, plaintiffs have not proved by clear and convincing evidence that SottoPelle's positions here and in the *Donovitz* litigation were factually inconsistent. To review, the *Donovitz* litigation took place in 2012 and involved a breach of an operating agreement for a SottoPelle entity in Texas. In part, the pleading filed by Gino Tutera, CarolAnn Tutera, and two SottoPelle entities stated that the Tuteras developed a program of bio-identical pellet delivery hormone replacement services and products. The pleading further stated that SottoPelle operated a dosing website, which used proprietary formulas and calculations for determining the appropriate dosage of "its product." The pleading alleged that Donovitz had "ordered and used substandard, compounded pharmaceutical substances in the production of SottoPelle products."

¶ 66     The *Donovitz* pleading does not explicitly state that hormone pellets were designed, manufactured, and sold by SottoPelle. Further, the *Donovitz* pleading does not define "its product" and plaintiffs simply assert, without explanation, that "its product" refers to the hormone pellets themselves. Plaintiffs have not shown by clear and convincing evidence that SottoPelle's positions in the two proceedings were factually inconsistent.

¶ 67     To the extent that plaintiffs argue, separate from judicial estoppel, that the *Donovitz* pleading led them to believe that SottoPelle designed, manufactured, or sold pellets, that argument is not persuasive. Even if the *Donovitz* pleading suggested that SottoPelle designed or

manufactured hormone pellets, upon filing the complaint in this case, plaintiffs in this case were presented with information from a variety of sources—SottoPelle's and Dr. Gorens's answers to discovery, CarolAnn Tutera's deposition in this case, and Dr. Gorens's deposition—that SottoPelle was not the actual manufacturer and an alternative theory was a more viable option. Again, plaintiffs' counsel acknowledged as much in February and March 2019, but still did not subpoena the pharmacies or amend the complaint until months later. The *Donovitz* counterclaim is not an excuse for plaintiffs' delay.

¶ 68    Lastly, plaintiffs rely on *Drehle v. Fleming*, 129 Ill. App. 2d 166 (1970), to suggest that this court allow the amendment as relief for SottoPelle's obstructive discovery practices. Plaintiffs assert that SottoPelle was not responsive to requests about its connection with pharmacies and was less than truthful, claiming that "SottoPelle received cash payments and free pellets *** in a symbiotic relationship." As discussed above, the record does not support this conclusion. Further, in *Drehle*, *id*. at 172, the court found that a new trial was required where the defendant failed to disclose a witness during discovery. Here, SottoPelle did not prevent plaintiffs from learning about the pharmacies. *Drehle* is not helpful to plaintiffs.

¶ 69                                    III. CONCLUSION

¶ 70    Although the proposed amendment that alleged an apparent manufacturer claim cured the defective pleading, the enterprise theory claim did not. Further, the circuit court properly found that the proposed amendment would create prejudice or surprise to SottoPelle, was untimely, and there were previous opportunities to amend. The circuit court did not abuse its discretion in denying leave to amend and the judgment of the circuit court is affirmed.

¶ 71    Affirmed.